The court will proceed to the fifth case, Simons v. Saul. Mr. Sutterfield. Yes. Can you hear me? Yes. Good morning, Your Honor. On behalf of the appellant, Ms. Simons, I want to advise the court that its position of the claimant that this is kind of a case of a classic unrepresented claimant. It starts with, in our argument, we talk about the underdeveloped DE testimony, but obviously this goes back further. We have the issue in terms of the ALJ's reliance on Dr. Schneider's opinion that her use of these annex 6 milligrams daily is so impairing that he finds her concentration poor. He's concerned about whether she is going to be driving herself home. He has any number of concerns about how she's functioning. And her use of that medication extends for a period well beyond one year, and the ALJ never engaged in any analysis of the impact of that medication going back that far. And it's our position that that was not a harmless error, that there is any number of indications in the record, particularly her need to lie down, her failure to stick with activities, things of that sort that support her having limitations that would be consistent with the VE's testimony about being off work and failing to have sufficient output during the day. We're also, in terms of the ALJ's development of her record, believe that it's significantly inconsistent with regard to his discussion of her pain treatment records and her history. It was such that when she was seen by the state agency examiner, he found that the claimant, based on his examination, was limited to a combination of sitting, standing, walking of no more than four hours a day. The ALJ, when he disregarded that opinion, gave no explanation in terms of how and why he did so, and neither did the state agency doctors. And in terms of his discussion of that, he leaves off many of her functional limitations in terms of her ability to bend, her ability to walk, her ability to perform different functions during the exam. None of those are discussed by the ALJ or by the non-examining consulting doctors. This, in turn, then results in an RFC that's grossly inadequate. And in that instance, the ALJ, again, has a duty to fully explain the claimant's medications and their effects, their limiting effects, why they're prescribed, things of that sort. That would be, again, consistent with case law and the regulations for 404, 1529C, 2, and C3, and SSR 16-3P. So those are the... And then topping that off, then we have the ALJ, again, being very picking and choosing as he goes through the evidence with respect to the claimant's daily activities. There is no indication that her daily activities are inconsistent with the findings of the state agency examining physician who limited her to, again, a combined functional capacity of sit, stand, and walk no more than four hours a day. And, again, the ALJ's rejection of that, again, is premised, again, on his failure to look at the records in terms of her medications, pain, spine cord stimulator, its removal, matters of that sort. For those reasons, the claim should be sent back for rehearing so that the claimant has an adequate opportunity to have those matters addressed. All right. Thank you, Mr. Sutterfield. Ms. Hahn? Thank you, Your Honors. Lou Hahn on behalf of the Commissioner of Social Security. I want to begin where Mr. Sutterfield began, which is a fairly new theory of Ms. Simons' case based on the fact that she was not represented. On page 8 of our brief, when we summarize Ms. Simons' testimony, we go through the ALJ's confirmation of her understanding of her right to representation. As we say in our brief, the ALJ explained the ways in which an attorney or non-attorney could have helped her in her application for benefits. The ALJ explained that attorneys and non-attorneys have a fee cap. The ALJ said that he would reschedule the case so that she could obtain representation. But after all of that, Ms. Simons decided to voluntarily and knowingly waive her right to representation and continue with the hearing, as certain claimants do. And in these non-adversarial hearings, occasional claimants will not have a representative. And in this case, on page 141 of the administrative record, is the actual written waiver of right to legal representation that Ms. Simons signed. After the hearing, the ALJ kept the record open. And after the hearing, there were additional medical records that Ms. Simons submitted for the ALJ's consideration. And these are Exhibits 24F and 25F. And these exhibits are very important because this is evidence that comes from the more recent psychiatric visits that Ms. Simons had with a psychiatrist, a Stéphane Massouf. That psychiatrist never rendered a medical opinion indicating that Ms. Simons had additional mental limitations that the ALJ didn't assess her with in his residual functional capacity findings. The additional evidence post-hearing also includes records from an internal medicine physician, a Dr. Rawlings, who examined Ms. Simons and assessed in his exam her musculoskeletal functioning. And again, Dr. Rawlings did not render any kind of opinion indicating that Ms. Simons had additional limitations. Opposing counsel goes back to records from 2014-2015, some of which include the consultative examining physicians. There was a psychologist, Dr. Schneider, as well as a physician, Dr. Korber. And in 2015, those sources, medical sources, examined Ms. Simons and the ALJ in his decision talked at length about those opinions. The ALJ described the physical examination with Dr. Andrew Korber and explained why that opinion was entitled to only partial weight. And that was important because, as Mr. Sutterfield described, there were some additional limitations regarding sitting and standing. But the ALJ explained that recent evidence, such as the evidence that I just discussed from the Dr. Rawlings physical examinations as more recent as 2016 and 2017, didn't support the 2015 findings of the consultative examining physicians. Ms. Hahn, it's Judge Scudder. I've got a question for you just to try to understand an aspect of the RFC here. So in the paragraph that is devoted to the RFC, paragraph 4, page 5 of 9 of the ALJ's order, right in the middle of it, as an exception to the performance of light work, the ALJ says the claimant could perform occasional postural activities. What does that mean? That's a very good question, Judge Scudder. And those postural activities, if you look at the next page of the ALJ's decision, on which, at the very bottom of page 6 of 9, Appendix 31, Record 20, the ALJ talks about the state agency medical consultants, and those were the reviewing agency physicians. And those findings, which are in the record, starting at page 71 and again at page 86, it's in those findings and that functional capacity form that those state agency doctors talk about postural limitations. There are sections of both of those in which the state agency physicians rate Ms. Simon's postural function. And it's those kind of postural activities, such as climbing stairs, balancing, kneeling, crouching, crawling, et cetera. So, Your Honor, it's kind of a whole host of different activities of the body that both the state agency physicians rated Ms. Simon's on. Okay, so is it fair to say that… And the ALJ relied on that. And I saw the reference at the bottom of 31 as well, but that's a… Your point is that that's a limitation on functional capacity. Occasional postural activities is a term of art here. You get into the record and you see that it's actually a limitation on what she can do. The reason I'm asking it is I was trying to figure out, in response to Mr. Sutterfield's argument that the RFC is deficient, whether that language, occasional postural activities, incorporates sufficient limitations to address what seemed to be pretty clear back, you know, and long-term back troubles on the claimant's part. Yes, Your Honor. The RFC, as defined in the regulations, is the most that the individual can do. So, most being no more than these occasional postural activities. Occasional is also a term of art that's defined as one-third of the day. So, it's from the state agency physicians' reviewing opinions that the ALJ relied on in formulating this portion of the RFC finding. And this is regarding the ability to do things such as balancing and stooping and kneeling. With regard to the back impairments and that evidence, there is more recent evidence, as I discussed, with regard to Ms. Simons' back functioning. Dr. Rawlings, again, in 2016 and 2017 examined Ms. Simons and he found that she had normal range of motion, normal gait, no deformity, normal strength. The most recent record is from April 2017 and this is found on page 643 of the record. And on exam, Dr. Rawlings found that she had minimal difficulty rising from a chair and a mild limp secondary to pain. Even the consultative examining physician, Dr. Andrew Korber, in 2015, when he examined Ms. Simons, found that she could still lift up to 20 pounds and did not place any additional kind of lifting and carrying limitations on Ms. Simons. And the regulations defined light work as the ability to lift up to 20 pounds. And the ALJ said on page 6 of his decision that he was going to give that portion of the consultative examining physician's opinion some weight. But as I said, it's very notable that none of Ms. Simons' own doctors rendered a disabling opinion or even any opinion that would have added additional limitations onto the ALJ's RFC finding. ALJs in every case, and certainly in this case, take the evidence as they receive it. They analyze that evidence to come up with the most that an individual can do. And here the ALJ tied the medical evidence to this RFC finding. There's even now, before this court, no showing of additional mental or physical limitations based on the evidence. At the heart of this case is whether the ALJ's fact finding satisfied the substantial evidence standards, which is how you review ALJ decisions. There is no showing that the ALJ was unreasonable. ALJs do not have to talk about every single piece of medical evidence in a record. It's whether you can trace the ALJ's reasoning to his determination in this case, and we argue that you can. The ALJ discussed the relevant evidence from as early as 2012, all the way to the evidence received after the hearing. And from that evidence, the ALJ assessed a light RFC with additional physical and mental limitations. And based on those, at step five, the ALJ found that Ms. Simons, despite her mental and physical problems, could still perform a significant number of jobs. Unless the panel has any additional questions, we ask that you affirm the ALJ's decision, which was supported by substantial evidence. Thank you, Ms. Simons. Mr. Sutterfield. Thank you. In reply, again, what is missing here is the discussion of her pain medications. This is a pain case. Taking an extreme example, if you have an individual, let's say it's a Chicago Bear offensive tackle, I don't want to get anyone to question their ability to lift 20 pounds, but that same individual is going to have a need to lie down, recline, and change positions that would be consistent with what's implicit in Dr. Korber's examination, namely this individual can only sit, stand, walk for a total of four hours. You can't confuse ability to lift and make that all-inclusive that, okay, we're going to put blinders on in terms of the remaining limitations that the individual has. The medications that she's on are powerful antibiotics. She's on OxyContin, Viragesic patch. Those are just some of the medications that she's on, and the ALJ studiously avoids discussing her pain. That's central to the 2,15, 12, 29, C3 and C2, which says we're not going to limit ourselves exclusively to objective findings, although he made a number of findings that there were significant limitations in terms of her ability to squat, her ability to the motion of her spine, matters of that sort, her decreased sensation in her leg. There's any number of objective findings that were made by Dr. Korber that the ALJ didn't discuss. In hindsight, looking at this, there is certainly someone that's an SSI claimant like Ms. Simons isn't necessarily going to get the upscale exams that other people get. I don't see, you know, there's never an examination by Dr. Black at all, despite his ongoing treatment of her. When she does see a specialist, namely Dr. Naritam, who removes the spine cord stimulator, his objective findings are consistent with an inability or certainly consistent with Dr. Korber's exam, and again, those are not discussed by the ALJ. When you have someone on these kind of medications, you have to discuss those. You simply cannot shove them to the corner and ignore them. That's central to what happened here. That's really, I think, the core issue in the case. Again, I also think, again, that if she has ongoing use of Xanax at that level and it's found to be where it impairs her to the extent that the state agency doctor, Dr. Schneider, is sending out all kinds of alarms that maybe she should be hospitalized to be taken off the medication, that requires ALJ to look at why is she on this medication, what kind of functional limitations would she have given that she's on it for 13 straight months and for a period that's implicit she probably is on it for longer than that. Again, the records are not fully developed or they're missing or she did not go for whatever reason, but there's a gap there, but at least for 13 months. Are there any questions about any of the matters I've raised today? Apparently not. I appreciate it. I'm sorry? No, there are no further questions. Did you want to have a concluding remark, Mr. Sutterfield? Again, I believe the case should be sent back so that these matters are adequately addressed. I think that there is a significant likelihood that there is harm by the ALJ not considering somebody being on the types of medications that she's on, both for her mental, 6 milligrams of Xanax daily, and for her pain, including a spine cord stimulator that in itself was causing her pain. These are matters that need to be addressed. And then I guess just, again, very quickly, finally, is that we did have the ALJ's clear failure to give a full description of her activities of daily living. They're very consistent with her medications and with the treatment regimen that she was under. Thank you very much. Thank you, Mr. Sutterfield. Ms. Hahn, the case is taken under advisement.